# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

MSP Recovery Claims, Series LLC, et al.,

Case No. 5:19cv00219

Plaintiffs,

-vs-

JUDGE PAMELA A. BARKER

Grange Insurance Company,

Defendant

MEMORANDUM OPINION AND ORDER

Currently pending is Defendant Grange Insurance Company's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (Doc. No. 12.) Plaintiffs MSP Recovery Claims, Series, LLC and Series 16-11-509 filed a Brief in Opposition, to which Defendant replied. For the following reasons, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I. Procedural Background

On January 28, 2019, Plaintiffs MSP Recovery Claims, Series LLC and Series 16-11-509, LLC (hereinafter referred to collectively as "Plaintiffs") filed a Class Complaint[1] against Defendant Grange Insurance Company asserting a private cause of action for double damages under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(3)(A). (Doc. No. 1.) Therein, Plaintiffs allege that Defendant "has repeatedly failed to reimburse payments by Plaintiff's assignors and the Class

---

[1] The Complaint defines the putative class as follows: "All Medicare Advantage Organizations, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, which made payments for a Medicare beneficiary's medical expenses where Defendant: (1) is the primary payer by virtue of having settled a claim with Medicare beneficiary enrolled in a Medicare Advantage plan; (2) settled a dispute to pay for personal injuries with a Medicare beneficiary enrolled in a Medicare Advantage plan; and (3) failed to reimburse Medicare Advantage Organizations, or their assignees, the payments provided for medical items and services related to the claims settled by Defendant. This class definition excludes (a) Defendant, its officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families." (Doc. No. 1 at ¶ 60.)

Members on behalf of Medicare beneficiaries enrolled in Part C of the Medicare Act . . .for medical expenses resulting from injuries sustained in an accident." (*Id*. at ¶ 2.)

Grange filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on April 4, 2019. (Doc. No. 12.) Plaintiffs filed a Brief in Opposition on May 6, 2019 (Doc. No. 17), to which Grange replied on June 3, 2019 (Doc. No. 21.) The parties each subsequently filed Notices of Supplemental Authority. (Doc. Nos. 24, 25.)

This matter was re-assigned to the undersigned on June 28, 2019 pursuant to General Order 2019-13.

## II. Factual Allegations

The Class Complaint contains the following factual allegations. On December 26, 2014, E.C. was injured in an accident, as a result of which he/she sustained a variety of injuries and required medical treatment and services. (Doc. No. 1 at ¶¶ 8, 9.) At this time, E.C. was enrolled in a Medicare Advantage Plan[2] issued and administered by SummaCare, Inc. (*Id*. at ¶ 7.) E.C.'s medical providers issued a bill for payment of the accident-related medical expenses to SummaCare in the amount of $8,864.78. (*Id*. at ¶ 10.) SummaCare paid $786.46. (*Id*.)

The tortfeasor responsible for the accident was insured by Defendant Grange under a liability insurance policy. (*Id.* at ¶ 8.) E.C. subsequently made a claim against the tortfeasor, which Defendant settled for the total amount of $13,800. (*Id*. at ¶ 11.) Plaintiffs allege that, as a result of this

---

[2] As discussed *infra*, Part C of Medicare created the program now known as "Medicare Advantage." Under this program, enrollees may obtain their Medicare benefits through private insurers (known as Medicare Advantage Organizations or "MAOs") instead of receiving direct benefits from the government under Medicare Parts A and B. Plaintiffs allege that SummaCare is a Medicare Advantage Organization, or "MAO." (Doc. No. 1 at ¶ 7.)

settlement, "Defendant became a primary payer and subject to liability for E.C.'s accident-related medical expenses." (*Id.*)

Plaintiffs allege a similar set of facts with respect to claims relating to medical services provided to D.W. and M.K, both of whom were also enrolled in Medicare Advantage Plans issued and administered by SummaCare. Specifically, Plaintiffs allege that, on May 6, 2012 and October 25, 2015, respectively, D.W. and M.K. were injured in accidents caused by tortfeasors insured by Defendant under liability insurance policies. (*Id.* at ¶¶ 20, 27.) D.W. and M.K. sustained injuries that necessitated medical services and treatment. (*Id.* at ¶¶ 20-21, 27-28.) D.W.'s medical providers issued a bill for payment of the accident-related medical expenses to SummaCare in the amount of $7,601.13, of which SummaCare paid $2,114.50. (*Id.* at ¶ 29.) M.K.'s medical providers issued a bill for payment of the accident-related medical expenses to SummaCare in the amount of $218,486.01, of which SummaCare paid $51,393.27. (*Id.* at ¶ 22.) D.W. and M.K. asserted claims against Defendant's insureds, which Defendant subsequently settled for unspecified amounts. (*Id.* at ¶¶ 23, 30.) Plaintiffs allege that, as a result of these settlements, Defendant became a primary payer and subject to liability for D.W.'s and M.K.'s accident-related medical expenses. (*Id.*)

Plaintiffs MSP Recovery Claims, Series, LLC and Series 16-11-509, LLC claim that, as a primary payer, Defendant is legally obligated to reimburse for Medicare payments made by SummaCare with respect to E.C., D.W., and M.K. (*Id.* at ¶ 3.) Plaintiffs allege that they have the legal right to pursue these claims for reimbursement pursuant to a series of assignment agreements, copies of which are attached to the Complaint. (*Id.* at ¶ 13.) *See also* Doc. Nos. 1-5, 1-6. Specifically, Plaintiffs allege that, on May 12, 2017, SummaCare and MSP Recovery, LLC entered into a "Recovery Agreement," in which SummaCare irrevocably assigned all rights to recover

conditional payments made on behalf of its enrollees to MSP Recovery, LLC.[3]  (Doc. No. 1-5 at § 4.1) (hereinafter the "Recovery Agreement").  Thereafter, on June 12, 2017, MSP Recovery, LLC assigned all rights under the Recovery Agreement to "Series 16-11-509, LLC, a series of MSP Recovery Claims, Series LLC." (*Id*. at ¶ 15.) *See* Doc. No. 1-6.  On September 5, 2018, SummaCare sent a letter to MSP Recovery, LLC in which it confirmed that it "has consented to, approved, and ratified the assignment of Recovery Agreement executed on June 12, 2017 by MSP Recovery, LLC, and all rights contained therein, including all claims and reimbursement rights, to and in favor of MSP Recovery Claim Series, LLC or any of its designated series, including but not limited to, Series 16-11-509."  (Doc. No. 1-7.)

Meanwhile, on May 10, 2017, MSP Recovery, LLC sent a letter to Defendant regarding SummaCare's payment of E.C.'s medical expenses, in which it placed Defendant "on notice that pursuant to our client's rights as an MAO or a contracted risk provider, to the extent that payment for Medicare health benefits and costs for medical services and/or supplies were made by the Medicare Secondary Payer or at risk provider for which your Company is the primary payer and/or plan, we hereby assert our rights as a Medicare secondary payer, and request that you provide us the information requested below in order to confirm our rights and comply with our coordination of benefits obligations."  (Doc. No. 1-4.)  The information requested by MSP Recovery, LLC included the insured's contact information, a copy of the policy, the limits of liability, a statement of any policy or coverage defenses, and any copies of documents or checks evidencing any settlements made on behalf of the Medicare beneficiary.  (*Id*.)

---

[3] MSP Recovery, LLC is not a party to this action.

4

After Defendant failed to submit reimbursement for E.C., D.W. or M.K.'s medical expenses, Plaintiffs MSP Recovery Claims, Series LLC and Series 16-11-509, LLC filed the instant action against Defendant Grange on January 28, 2019.  (Doc. No. 1.)

## III.    Standards of Review

Defendant moves for dismissal on the basis of both lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction.  *Wayside Church v. Van Buren County*, 847 F.3d 812, 816–17 (6th Cir. 2017).  A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[ ] the allegations in the complaint as true." *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co*., 491 F.3d 320, 330 (6th Cir. 2007).  To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction.  *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME, Local 11*, 397 F.Supp.3d 1076, 1081-1082 (S.D. Ohio 2019).

A factual attack, on the other hand, "raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church*, 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc*., 491 F.3d at 330). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus*., 798 F.2d 913, 915 (6th Cir. 1986).  The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556, (2007)).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekara*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007). Nonetheless, while "Rule 8 marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679.

## IV.    Analysis

Defendant argues Plaintiffs' claim should be dismissed for several reasons.  First, Defendant argues that Plaintiffs lack standing to pursue claims under the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. §§ 1395y(b)(3)(A) because Plaintiffs have failed to either (1) demonstrate that there is a valid assignment of claims by an MAO to Plaintiffs; or (2) plausibly allege an injury causally related to MSPA claims because the Complaint does not allege facts establishing that the statutory requirements for conditional payments were met by Plaintiffs' assignor.  (Doc. No. 12.)  Second, Defendant argues that the Complaint should be dismissed because Medicare Advantage Organizations ("MAOs") do not have a private right of action under the MSPA.  (*Id.*)  Third, Defendant argues that Plaintiffs' claims are barred because they failed to adhere to the MSPA's three-year presentment deadline and/or did not provide proper notice to Defendant of conditional payments. (*Id.*)  Fourth, and finally, Defendant argues dismissal is warranted because Plaintiffs fail to allege facts showing that Grange had a responsibility to pay, which Defendant argues is required to pursue reimbursement claims under the MSPA.  (*Id.*)

Prior to reaching the merits of the parties' arguments, the Court will briefly set forth the statutory and regulatory background relevant to Plaintiffs' claims.

### A.    Statutory and Regulatory Background

"Medicare is a federal health insurance program that provides health insurance benefits to people sixty-five years of age or older, disabled people, and people with end-stage renal disease." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 915 (6th Cir. 2008).  Parts A and B of the Medicare

Act create, describe, and regulate traditional fee-for-service Medicare provisions, which are administered by the Centers for Medicare & Medicaid Services ("CMS"). *See In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 685 F.3d 353, 357 (3rd Cir. 2012). Part C creates the program now known as Medicare Advantage, under which Medicare-eligible persons may elect to obtain their Medicare benefits through private insurers (also known as Medicare Advantage Organizations or MAOs) instead of receiving direct benefits from the government under Parts A and B. *Id. See also Humana Medical Plan, Inc v. Western Heritage Insurance Co.*, 832 F.3d 1229, 1233 (11th Cir. 2016).

Initially, "Medicare paid for all medical treatment within its scope and left private insurers merely to pick up whatever expenses remained." *Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011). In 1980, in an effort to curb the rising costs of Medicare, Congress enacted the Medicare Secondary Payer Act ("MSP"), which is located in Part E of the Medicare Act. *See* 42 U.S.C. § 1395y(b). Under this Act, when both Medicare and a private plan would cover a Medicare beneficiary's expenses, Medicare is the "secondary payer" and the private plan is the "primary payer." *Bio-Med. Applications,* 656 F.3d at 281. As the Sixth Circuit explained, "[t]he primary payer is responsible for paying for the patient's medical treatment; however, if Medicare expects that the primary payer will not pay promptly, then Medicare can make a 'conditional payment' on its behalf and later seek reimbursement." *Id. See* 42 U.S.C. § 1395y(b)(2)(B)(i). If Medicare makes a conditional payment, the primary plan must reimburse the Medicare Trust Fund. 42 U.S.C. § 1395y(b)(2)(B)(ii). If the primary plan fails to reimburse the Fund, "the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an

employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan." 42 U.S.C. § 1395yb(2)(B)(iii). The United States may then, "in accordance with paragraph (3)(A) collect double damages against any such entity." *Id.*

> Paragraph (3)(A) of the MSP Act, entitled "Private cause of action," provides as follows:
>
> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A). Subparagraph (1) relates to group health plans and is not relevant to the issues presented herein. Subparagraph (2)(A) provides that Medicare may not pay when a primary plan is expected to pay, "except as provided in subparagraph [2](B)," which in turn provides that when the primary plan "has not or cannot reasonably be expected" to pay "promptly," "the Secretary" may make a conditional payment. *See* 42 U.S.C. §§ 1395y(b)(2)(A) and (B). *See also Michigan Spine & Brain Surgeons, PLLC v. State Farm Mutual Automobile Ins. Co.*, 758 F.3d 787, 792 (6th Cir. 2014).

Interpreting the above, courts have found that "[t]he Medicare Statute thus creates two separate causes of action allowing for recovery of double damages where a primary payer fails to cover the costs of medical treatment." *In re Avandia*, 685 F.3d at 359. When Medicare makes a conditional payment and the primary payer does not reimburse it, the United States may bring suit pursuant to § 1395y(b)(2)(B)(iii). In addition, a private cause of action exists pursuant to § 1395y(b)(3)(A) when a primary payer fails to make required payments.

The Medicare Advantage Act, commonly known as Part C, was enacted in 1997, seventeen years after the enactment of the MSP Act. *Humana Medical Plan, Inc.*, 832 F.3d at 1235.

"Congress's goal in creating the Medicare Advantage program was to harness the power of private sector competition to stimulate experimentation and innovation that would ultimately create a more efficient and less expensive Medicare system." *In re Avandia*, 685 F.3d at 363 (citing H.R. Rep. No. 105-217, at 585 (1997), 1997 U.S.C.C.A.N. 176, 205-06 (Conf. Rep.)). Under the Medicare Advantage program, a private insurance company, operating as an MAO, administers the provision of Medicare benefits pursuant to a contract with CMS.[4] Part C includes a reference to the MSP, entitled "Organization as secondary payer," which states as follows:

> Notwithstanding any other provision of law, [an MAO][5] may (in the case of the provision of items and services to an individual under [an MA] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22(a)(4). In several cases, a MAO has contended that § 1395w-22(a)(4) (sometimes called the MAO "right-to-charge" provision) creates an implied federal cause of action

---

[4] As the Third Circuit explained: "CMS pays a MAO a fixed amount for each enrollee, per capita (a "capitation"). The MAO then administers Medicare benefits for those enrollees and assumes the risk associated with insuring them. MAOs … are thus responsible for paying covered medical expenses for their enrollees. Part C allows MAOs some flexibility as to the design of their MA plans. The MAO is required to provide the benefits covered under Parts A and B to enrollees, but it may also provide additional benefits to its enrollees. § 1395w–22(a)(1)–(3)." *In re Avandia*, 685 F.3d at 357-358.

[5] The statutory text refers to MAOs as "Medicare+Choice" organizations. For the sake of consistency and simplicity, this opinion will refer to these organizations as "MAOs" throughout. *See In re Avandia*, 685 F.3d at fn 8 (noting that, although the statute refers to Medicare+Choice organizations, the term MAO is the "contemporary terminology") (citing Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. 108–173, 117 Stat. 2176, 42 U.S.C. § 1395w–21 note, which provides that "[T]he Secretary shall provide for an appropriate transition in the use of the terms 'Medicare+Choice' and 'Medicare Advantage' (or 'MA') in reference to the program under part C of title XVIII of the Social Security Act.").

for an MAO to recover secondary payments.  However, several courts have rejected this argument. *See, e.g., Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1153, 1154 (9th Cir. 2013) (explaining that the MAO right-to-charge provision "does not create a federal cause of action in favor of a[n] MAO"); *Care Choices HMO v. Engstrom*, 330 F.3d 786, 790 (6th Cir. 2003) (reaching a similar conclusion as to 42 U.S.C. § 1395mm(e)(4), which addresses secondary payment by Medicare-substitute HMOs).

### B.    Subject Matter Jurisdiction

Defendant first argues that this Court lacks subject matter jurisdiction because Plaintiffs do not have standing.  (Doc. No. 12-1.)  "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies.'"  *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597–98 (2007) (alteration in original) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, (2006)).  The case-or-controversy requirement is satisfied only where a plaintiff has standing.  *See Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 273 (2008).

"[T]he irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.* (internal quotation marks and citations omitted).  "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'"  *Id.* at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).  "Third, it must be

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561(internal quotation marks and citation omitted).

Here, Defendant argues that Plaintiffs lack standing because they have failed to either (1) demonstrate that there is a valid assignment of claims by a MAO to Plaintiffs; or (2) plausibly allege an injury causally related to MSPA claims. (Doc. No. 12-1.) The Court will address each of these arguments in turn.

### 1. Validity of Assignment

Defendant first asserts that this Court lacks subject matter jurisdiction because Plaintiffs fail to allege a valid assignment of claims from SummaCare sufficient to confer standing to assert a claim under §1395y(b)(3)(A). (Doc. No.12-1 at p. 6.) Defendant advances numerous arguments in support of this assertion. Defendant argues that Plaintiffs do not have standing because "the Recovery Agreement does not describe SummaCare as a MAO." (*Id*. at p. 8.) Defendant also asserts that Plaintiff MSP Recovery Claims, Series LLC does not have standing to assert a claim because it is not in the chain of assignments from SummaCare; i.e. Plaintiff MSP Recovery Claims, Series LLC is not a party to either the May 2017 Recovery Agreement or the June 2017 Agreement with Plaintiff Series 16-11-509, LLC. (*Id*.) Defendant then argues that the May 2017 Recovery Agreement is not a true assignment of claims because it does not identify any specific claims or beneficiaries, prohibits assignment without the consent of the other party, is effective for only one year with automatic annual renewal unless terminated, and is "clearly prospective in nature." (*Id*. at p. 7.) Finally, Defendant argues that the Recovery Agreement is not a valid assignment under Ohio law because "contingent fee arrangements, in which a party agrees to share recovery with a second party who will pursue the recovery, do not give the second party standing to assert the claim." (*Id.* at p. 8.)

Prior to reaching the merits of Defendant's arguments, the Court first addresses the proper standard of review. As noted above, the standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church,* 847 F.3d at 816–17. Here, Defendant does not clearly indicate whether it is asserting a facial or factual challenge with respect to its argument regarding the validity of the assignments at issue.

For the following reasons, the Court construes Defendant's Motion as raising a facial attack on the Court's subject matter jurisdiction. Throughout Section III.A.1 of its Motion and Section II.A.1 of its Reply Brief, Defendant bases its arguments on Plaintiffs' alleged failure to plausibly allege the existence of a valid assignment. *See, e.g.,* Doc. No. 12-1 at p. 6; Doc. No. 21 at p. 2. Moreover, Defendant does not cite any affidavits or documents outside those attached to the Complaint in support of its legal arguments. *See, e.g., MSP Recovery Claims, Series LLC v. USAA General Indemnity*, 2018 WL 5112998 at * 7 (S.D. Fla. Oct. 19, 2018) ("Because USAA does not ask the Court to consider any extrinsic evidence outside the [complaint] or its attachments, the Motion 'constitutes a 'facial attack on [Plaintiff's] standing.'") Thus, and in the absence of any meaningful discussion of this issue in its Motion or Reply Brief,[6] the Court treats Defendant's arguments

---

[6] If Defendant sought to raise a factual attack on the Court's subject matter jurisdiction with respect to the validity of the assignments at issue, it was incumbent upon Defendant to make that clear in its Motion and briefing. The Court notes that, in the Fact section of its Motion, Defendant does reference the consideration of extrinsic evidence in deciding a motion under Rule 12(b)(1) and cites the affidavit of Dominic Moscato. (Doc. No. 12-1 at p. 3.) At no point, however, does Defendant state that it is raising a factual challenge to subject matter jurisdiction, nor does Defendant argue that Mr. Moscato's affidavit bears any relevance to the particular arguments it raises regarding the assignments at issue. In sum, Defendant fails to either recite the standard of review for dismissal under Rule 12(b)(1), discuss the differences between facial and factual challenges to jurisdiction, or clearly articulate what type of challenge it is raising in the instant case. Defendant did not put Plaintiffs on notice that it was raising a factual challenge to jurisdiction and, therefore, the Court treats Defendant's Motion as raising a facial challenge with respect to this issue.

13

regarding the validity of the assignments as raising a facial attack. Accordingly, in considering the parties' arguments on this issue, the Court "must take the material allegations of the [complaint] as true and construe[ ] [them] in the light most favorable to the nonmoving party." *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). *See also Gentek Bldg. Prods.*, 491 F.3d at 330.

### a. Failure to allege that SummaCare is a MAO

Defendant asserts that dismissal is warranted because "the Recovery Agreement does not describe SummaCare as a MAO, but rather as a Health Maintenance Organization, Maintenance Service Organization, Independent Practice Association, Medical Center, and/or other health care organization and/or provider." (Doc. No. 12-1 at p. 8.) Defendant argues this language is insufficient to confer standing to assert a cause of action under 42 U.S.C. § 1395y(b)(3)(A). (*Id*. at p. 9.)

In response, Plaintiffs note that the Complaint specifically alleges that SummaCare is a MAO. (Doc. No. 17 at p. 1, fn 1). *See* Doc. No. 1 at ¶ 7. Plaintiffs argue that "Defendant's attempt to call that fact into question strains reason, as SummaCare's status as a MAO is readily confirmed by reference to the MA Plan directory published by the Centers for Medicare and Medicaid Services ('CMS')." (*Id.*) Defendant does not address this issue in its Reply Brief.

The Court finds Plaintiffs have sufficiently alleged that SummaCare is a MAO. In the Complaint, Plaintiffs specifically allege that SummaCare is a MAO and that E.C., D.W. and M.K. were enrolled in Medicare Advantage Plans issued and administered by SummaCare in that capacity. (Doc. No. 1 at ¶¶ 7, 10, 19, 22, 26, 29.) Moreover, while the May 2017 Recovery Agreement does not specifically describe SummaCare as a MAO, it does describe SummaCare as a healthcare organization that provides, or provides for the provision of, medical and health care services to persons, "including but not limited to those who are covered under government healthcare programs

14

such as . . . *Medicare Advantage*." (Doc. No. 1-5 at PageID# 47) (emphasis added). In addition, the Agreement provides that MSP Recovery will analyze certain data in order to "identify claims that should be paid by a primary payer, including those that should have been paid . . . as required by state and/or federal laws as it pertains to the processing of claims by a *Medicare Advantage Organization*." (*Id*.) (emphasis added). Taken as a whole, the Court finds that Plaintiffs have sufficiently alleged that SummaCare is a MAO.[7] Defendant's argument to the contrary is without merit.

### b. Chain of Assignments

Defendant next argues that Plaintiff MSP Recovery Claims, Series LLC does not have standing to assert any claims in this action because it is not in the chain of assignments from SummaCare. (Doc. No. 12-1.) Plaintiffs disagree, arguing that SummaCare assigned its rights to MSP Recovery, LLC, which in turn assigned its rights to Plaintiff Series 16-11-509, LLC, which then entered into an agreement with Plaintiff MSP Recovery Claims, Series LLC allowing it to pursue the action in its own name or in the name of its designated series. (Doc. No. 17 at p. 2.) In response, Defendant argues that Plaintiffs have "failed to plausibly allege the source of" Plaintiff MSP Recovery Claims, Series LLC's alleged contractual right to pursue claims assigned to Series 16-11-509 LLC. (Doc. No. 21 at p. 2.)

The documents attached to the Complaint reveal the following. On May 12, 2017, SummaCare Inc. executed a "Recovery Agreement," pursuant to which it assigned its legal rights to

---

[7] The Court also notes that CMS' public website does, in fact, identify SummaCare as an MAO as of the date of this Opinion. *See* https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/MCRAAdvPartDEnrolData/MA-Plan-Directory.html. Courts have taken judicial notice of the CMS website as "a source which cannot reasonably be questioned." *See, e.g., MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, 2018 WL 1953861 at * 4 (S.D. Fla. April 25, 2018).

recover certain payments for the provision of health care services to "MSP Recovery, LLC." (Doc. No. 1-5.) As Defendant correctly notes, "MSP Recovery, LLC" is not a party to the instant action. On June 12, 2017, however, "MSP Recovery, LLC" entered into an Assignment Agreement with "Series 16-11-509, LLC, a series of MSP Recovery Claims, Series LLC." (Doc. No. 1-6.) This Assignment Agreement provides, in relevant part, as follows:

> KNOW ALL MEN BY THESE PRESENTS, that each undersigned Assignor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", Assigned Assets" and "Assigned Documents" (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated May 12, 2017, by and among SummaCare, Inc., an Ohio corporation (the "Client"), and MSP Recovery, LLC, a Florida limited liability company (the "Agreement"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Agreement, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto. *** The intent of the parties is to transfer any and all rights title and interest that MSP Recovery LLC obtained as an assignee from the assignor.

(Doc. No. 1-6.)

Subsequently, on September 5, 2018, SummaCare sent a letter to MSP Recovery, LLC in which it "confirm[ed], pursuant to the Recovery Agreement, that SummaCare, Inc, has consented to, approved, and ratified the assignment of the Recovery Agreement executed on June 12, 2017 by MSP Recovery, LLC, and all rights contained therein, including all claims and reimbursement rights, to and in favor of MSP Recovery Claims Series, LLC or any of its designated series, including but not limited to, Series 16-11-509." (Doc. No. 1-7.)

In the Complaint, Plaintiffs further allege that Plaintiff MSP Recovery Claims, Series LLC has a "limited liability company agreement" that provides for the establishment of one or more designated Series. (Doc. No. 1 at ¶ 55.) Specifically, Plaintiffs allege as follows:

> 56. MSP Recovery Claims, Series LLC has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other Company assets, and in order to account for and associate certain assets with certain particular series. All designated series form a part of MSP Recovery Claims, Series LLC and pursuant to MSP Recovery Claims, Series LLC's limited liability agreement and applicable amendment(s), each designated series will be owned and controlled by the MSP Recovery Claims, Series LLC. MSP Recovery Claims, Series LLC may receive assignments in the name of MSP Recovery Claims, Series LLC and further associate such assignments with a particular series, or may have claims assigned directly to a particular series. In either event, the MSP Recovery Claims, Series LLC will maintain the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series. Any claim or suit may be brought by the MSP Recovery Claims, Series LLC in its own name or it may elect to bring suit in the name of its designated series.

> 57. MSP Recovery Claims, Series LLC's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to MSP Recovery Claims, Series LLC.

(Doc. No. 1 at ¶¶ 56, 57.) Plaintiffs do not attach a copy of the "limited liability company agreement" referenced above to either the Complaint or their Brief in Opposition to Defendant's Motion to Dismiss. Nor do Plaintiffs identify the signatories to this alleged limited liability company agreement or state the date upon which it was executed.

Applying Delaware law, courts have held that "[a] 'series' entity is similar to a corporation with subsidiaries, *see CML V, LLC v. Bax*, 6 A.3d 238, 251 (Del. Ch. 2010), and parent corporations lack standing to sue on behalf of their subsidiaries, *see Elandia Int'l, Inc. v. Koy*, 09-20588-Civ, 2010 WL 2179770, at *5 (S.D. Fla. Feb. 22, 2010)." *MSP Recovery Claims, Series LLC v. USAA General Indemnity Company*, 2018 WL 5112998 at * 12 (S.D. Fla. Oct. 19, 2018). *See also MSP Recovery Claims, Series LLC v. New York Central Mutual Fire Insurance Company*, 2019 WL 4222654 at * 6

(N.D. N.Y. Sept. 5, 2019).[8]  As Defendants correctly note, several courts have reviewed assignments nearly identical to the ones at issue herein, and rejected arguments that such assignments confer standing on MSP Recovery Claims, Series LLC to sue on behalf of a Series entity.  *See USAA General Indemnity Company*, 2018 WL 5112998 at * 12; *New York Central Mutual Fire Insurance Company*, 2019 WL 4222654 at * 6.

In those cases, however, there is no indication from the courts' decisions that MSP Recovery Claims, Series LLC had entered into limited liability company agreements pursuant to which "any rights and benefits arising from assignments to its series shall belong to MSP Recovery Claims, Series LLC."  (Doc. No. 1 at ¶ 57.)  Here, Plaintiffs do make this specific allegation in the Complaint. Plaintiffs further allege that, under this alleged limited liability company agreement, "MSP Recovery Claims, Series LLC will maintain the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series."  (*Id*. at ¶ 56.)  While the Court is concerned that the actual limited liability company agreement at issue was not attached to the Complaint or otherwise provided to the Court for its consideration, at this stage of the proceedings the Court "must take the material allegations of the [complaint] as true and construe[ ] [them] in the light most favorable to the nonmoving party."  *Ritchie,* 15 F.3d at 598.  Thus, for purposes of the instant Motion only, the Court is compelled to find that Plaintiffs have set forth sufficient allegations

---

[8] *See also* 6 Del.C. § 18-215(a) (providing that "[a] limited liability company agreement may establish or provide for the establishment of 1 or more designated series of members, managers, limited liability company interests or assets. Any such series may have separate rights, powers or duties with respect to specified property or obligations of the limited liability company or profits and losses associated with specified property or obligations, and any such series may have a separate business purpose or investment objective."); 6 Del.C. § 18-215(b)(1) (providing that: "A protected series may carry on any lawful business, purpose or activity, whether or not for profit, with the exception of the business of banking as defined in § 126 of Title 8. Unless otherwise provided in a limited liability company agreement, a protected series shall have the power and capacity to, in its own name, contract, hold title to assets (including real, personal and intangible property), grant liens and security interests, and sue and be sued.").

in the Complaint to avoid the dismissal of Plaintiff MSP Recovery Claims, Series LLC for lack of standing.  Defendant may, of course, reassert this issue at later stages in the proceedings.

### c.     Whether the Recovery Agreement constitutes a "true" assignment

Defendant next argues that the May 2017 Recovery Agreement "is not a true assignment of claims of SummaCare, but an administrative services agreement." (Doc. No. 12-1 at p. 7.) Defendant complains that "[t]he agreement requires a 'closing statement' upon 'conclusion of a particular representation;' does not identify any specific claims or Medicare beneficiaries, including the three identified in the Complaint; prohibits assignment without the consent of the other party; and is effective for only one year with automatic annual renewal unless terminated," and asserts that these characteristics are "incompatible with a true assignment." (*Id*.)   Defendant also maintains that the Recovery Agreement is not truly an assignment because it is "prospective in nature, purportedly assigning future claims and dividing future proceeds." (*Id*.)

"An assignment is a transfer to another of all or part of one's property in exchange for valuable consideration."  *W. Broad Chiropractic v. Am. Family Ins*., 912 N.E.2d 1093, 1095 (Ohio 2009) (citing *Hsu v. Parker*, 688 N.E.2d 1099 (Ohio App. 11th Dist. 1996).  Under Ohio law, an assignment is a contract and thus, principles of contract interpretation apply.  *See, e.g., Cadle v. D'Amico*, 66 N.E.3d 1184, 1188 (Ohio App. 7th Dist. 2016).  When reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties.  *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos*., 714 N.E.2d 898 (Ohio 1999).

For the following reasons, the Court finds that the Recovery Agreement between SummaCare and MSP Recovery LLC clearly contemplates an assignment.  The Agreement provides, in relevant part, that:

> [SummaCare] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [SummaCare's] right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [SummaCare] that [SummaCare] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [SummaCare] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims", excluding those claims previously identified by other vendors currently under contract with [SummaCare].

(Doc. No. 1-5 at ¶ 4.1.) The Agreement also expressly references the MSPA, providing that "all claims that have been or can be identified by MSP Recovery as being recoverable pursuant to any contractual, statutory, equitable or legal basis, whether state or federal (*including the Medicare Secondary Payer Act*) and whether arising as a Part A, B or D claim(s) shall be deemed Assigned Claims." (*Id*. at ¶1.1) (emphasis added).

The Court finds the above language sufficient to demonstrate that SummaCare intended to transfer its rights under (among other things) the MSPA to MSP Recovery LLC. The Court further finds that the language of the June 2017 Assignment is sufficient to demonstrate MSP Recovery LLC's intent to transfer the rights it acquired under the May 2017 Recovery Agreement to Plaintiff Series 16-11-509 LLC.[9] While the Recovery Agreement also contains some elements of an arguably administrative nature (such as provisions relating to the identification of conditional payments and submission of closing statements), this does not detract from the clear intent of the parties to effectuate an assignment of claims, including claims under the MSPA.

---

[9] *See* Doc. No. 1-6 (providing that MSP Recovery LLC "irrevocably assigns, sells, transfers, conveys, sets over, and delivers to [Series 16-11-509 LLC] and its successors and assigns, any and all of [MSP Recovery, LLC's] right, title, ownership, and interest in and to the 'Assigned Claims' . . . as such terms are defined in the Recovery Agreement dated May 12, 2017, by and among SummaCare, Inc . . . and MSP Recovery LLC.")

In addition, the Court rejects Defendant's argument that the Recovery Agreement is not a "true assignment" because it fails to specifically identify individual claims and/or Medicare beneficiaries. Defendant cites no legal authority for the proposition that this level of specificity is required in the *assignment* itself. Rather, in the cases cited by Defendant, courts dismissed cases where the *complaints* failed to allege the "who, what, when or where" of the assignments at issue.[10] *See, e.g., MAO-MSO Recovery II, LLC v. Nationwide Mut. Ins. Co.*, 2018 WL 4941111 at * 3-4 (S.D. Ohio Feb. 28, 2018) (granting motion to dismiss where the complaint provided "no information about the assignors, including the identity of the assignors. . . , the dates of the assignments, or the specific language included in the assignments"); *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.* 2017 WL 5634097 at * 7 (C.D. Cal. Nov. 20, 2017) (dismissing claims for failure to plead sufficient facts regarding MAO assignments where plaintiffs "fail to allege the identity of the MAOs whose reimbursement rights they claim to own, the dates of the assignments, or the essential terms.") Here, by contrast, Plaintiffs specifically set forth the relevant provisions of the May 2017 Recovery Agreement and June 2017 Assignment in the Complaint; allege that the exemplar claims of E.C., D.W., and M.K. are within the scope of these assignments; and attach copies of the assignments to the Complaint as exhibits. *See* Doc. No. 1 at ¶¶ 13-16, 24, 31. Defendant has not demonstrated that this is insufficient at the pleading stage, or that the assignments are invalid as a matter of law because they failed to include more specific information about individual Medicare beneficiaries.

---

[10] Defendant's reliance on *Davita, Inc. v. Amy's Kitchen, Inc*., 379 F.Supp.3d 960 (N.D. Cal. 2019) is similarly misplaced. In that case, the court found Plaintiff Davita, Inc. lacked standing because "the assignment form nowhere mentions or includes the right to bring an MSPA cause of action." *Id.* at 972. Here, however, the Recovery Agreement expressly references the MSPA, providing that "all claims that have been or can be identified by MSP Recovery as being recoverable pursuant to any contractual, statutory, equitable or legal basis, whether state or federal (including the Medicare Secondary Payer Act) and whether arising as a Part A, B or D claim(s) shall be deemed Assigned Claims." (Doc. No. 1-5 at ¶1.1.) Thus, *Davita* is distinguishable from the instant action.

The Court agrees with Defendant, however, that, to the extent the Recovery Agreement purports to assign future rights, it is void under Ohio law. The Ohio Supreme Court has held that "[a] vested right in the assigned property is required to confer a complete and present right on the assignee." *W. Broad Chiropractic*, 912 N.E.2d at 1096 (citing *Christmas's Adm'r v. Griswold*, 8 Ohio St. 558, 563–564 (1858)). *See also Angel Jet Services, LLC v. Cleveland Clinic Employee Health Plan Total Care*, 34 F.Supp.3d 780, 783 (N.D. Ohio 2014) ("Relevant [Ohio] case law holds that one cannot assign rights not yet vested at the time an assignment is executed."). *See also* Restatement 2d of Contracts § 321(2) ("a purported assignment of a right expected to arise under a contract not in existence operates only as a promise to assign the right when it arises and as a power to enforce it.")

Here, the Recovery Agreement provides that SummaCare will provide "ongoing data transfers" every 30 days in order to allow MSP Recovery LLC to "identify claims that should be paid by a primary payer." (Doc. No. 1-5 at § 1.1.) Indeed, the Agreement expressly purports to apply to claims that arise after its effective date:

4.2    Continuing Assignment

Client acknowledges that Claims that arise after the Effective Date of this Agreement ("Prospective Claims") shall also be assigned to MSP Recovery as the Client's data is transferred to MSP Recovery for Claims' analysis and to pursue possible recovery on the Assigned Claims, excluding those claims previously identified by other vendors currently under contract with Client. In order to convey to MSP Recovery the assignment of the Prospective Claims, Client shall execute the addendum in the form attached as Exhibit A to this Agreement (the "Assignment Addendum").

(Doc. No. 1-5 at § 4.2.)

In light of Ohio Supreme Court authority prohibiting the assignment of future rights, the Court finds that those provisions of the Recovery Agreement that purport to assign claims that were not

vested as of the effective date of that Agreement are invalid as a matter of law.[11]  Thus, the Court

grants Defendant's Motion to Dismiss to the extent Count I is based on claims that had not yet vested

as of the effective date of the Recovery Agreement.[12]

### d. Whether the Recovery Agreement is invalid as an improper contingency fee agreement and/or on the basis of champerty

In its Motion, Defendant next argues, summarily, that "contingent fee arrangements, in which

a party agrees to share recovery with a second party who will pursue the recovery, do not give the

second party standing to assert the claim."  (Doc. No. 12-1 at p. 8.)  Defendant offers no further

elaboration of this argument, aside from parenthetical references to two unreported 1975 Ohio

appellate cases holding that an "assignee for the purpose of filing suit only . . . cannot be a real party

in interest."  *Bellaire Credit Control v. Munjas*, 1975 WL 180398 at * 3 (Ohio App. 7th Dist. Mar.

13, 1975).  *See also Ishler v. Ballard*, 1975 WL 182504 at * 2 (Ohio App. 6th Dist. Nov. 21, 1975).

Plaintiffs interpret this sentence in Defendant's Motion as raising the argument that Plaintiffs

lack Article III standing because the Recovery Agreement is a contingency fee agreement, rather than

a true assignment.  Plaintiffs assert that this argument is foreclosed by the United States Supreme

Court's decision in *Sprint Communications Co. L.P. v. APCC Servs.*, 554 U.S. 269 (2008).  In *Sprint*

---

[11] The Court notes that the Recovery Agreement contains a Severability clause that provides as follows: "Should any term(s) of this Agreement be deemed unenforceable, all other terms shall survive and remain in full force and effect.  This includes any and all financial terms, rulings and/or findings of the Centers for Medicare and Medicaid Services ('CMS'), Agency for Health Care Administration, or of a court of competent jurisdiction." (Doc. No. 1-5 at § 7.4.)  In the absence of any argument from the parties regarding this clause, the Court is not willing, at this time, to find that the entire Recovery Agreement is invalid due to the inclusion of provisions relating to the assignment of prospective claims.

[12]  The Court recognizes that the Recovery Agreement contains an automatic renewal provision for "successive terms of one (1) year unless terminated as set forth" in the Agreement.  (Doc. No. 1-5 at § 7.11.)  Plaintiffs, however, do not allege that the May 2017 Recovery Agreement was, in fact, automatically renewed for successive one-year terms.  Nor do they argue that Ohio law barring the assignment of future rights would be inapplicable in the event of any such automatic renewals.  Indeed, Plaintiffs do not acknowledge or address Defendant's argument regarding the non-assignability of future rights under Ohio law at any point in their Brief in Opposition.

*Communications*, the Supreme Court considered whether an assignee of an injured party's claim for monies owed under the Federal Communications Act had constitutional standing to pursue that claim. In that case, the assignors were payphone operators, who were owed money by long-distance carriers. The amounts of money owed were small and the payphone operators found it useful to assign unpaid claims to "aggregators." In return for a fee, the aggregators agreed to pursue the payphone operators' claims against the carriers, by filing suit if necessary. The aggregators agreed to remit the proceeds of the suits (minus their fee) to the payphone operators. A group of aggregators who had taken assignments from about 1,400 payphone operators brought suit against AT&T, Sprint, and other carriers. AT&T moved to dismiss, arguing that the aggregators had no standing to pursue these claims under Article III. AT&T's principal argument was that because the aggregators were assignees for the sole purpose of collection, with no interest in the proceeds of the suits beyond the collection of their fee, they had insufficient interest to support Article III standing.

The Supreme Court undertook an extensive historical analysis of the history of assignments and concluded that the aggregators had Article III standing. The majority wrote:

> [H]istory and precedent are clear on the question before us: Assignees of a claim, including assignees for collection, have long been permitted to bring suit. A clear historical answer at least demands reasons for change. We can find no such reasons here, and accordingly we conclude that the aggregators have standing.

*Id.* at 275. Moreover, even aside from the historical trend favoring the assignment of claims for collection purposes, the Court concluded that the aggregators had standing under Article III, explaining as follows:

> Petitioners argue ... that the aggregators have not themselves suffered any injury in fact and that the assignments for collection 'do not suffice to transfer the payphone operators' injuries.' It is, of course, true that the aggregators did not originally suffer any injury caused by the long-distance carriers; the payphone operators did. But the payphone operators assigned their claims to the aggregators lock, stock, and barrel.

And within the past decade we have expressly held that an assignee can sue based on his assignor's injuries. In *Vermont Agency [of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) ], we considered whether a *qui tam* relator possesses Article III standing to bring suit under the False Claims Act, which authorizes a private party to bring suit to remedy an injury (fraud) that the United States, not the private party, suffered.... [I]n *Vermont Agency* we stated quite unequivocally that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor."

*Id.* at 286 (citations omitted).

In a dissenting opinion, Chief Justice Roberts argued that the aggregators lacked Article III standing because they were paid a flat fee and had no stake in any recovery obtained from the carriers.

He explained as follows:

[R]espondents are authorized to bring suit on behalf of the payphone operators, but they have no claim to the recovery. Indeed, their take is not tied to the recovery in any way. [Respondents' compensation is] not based on the measure of damages ultimately awarded by a court or paid by petitioners as part of a settlement. Respondents received the assignments only as a result of their willingness to assume the obligation of remitting any recovery to the assignors, the payphone operators.

*Id.* at 300–01 (Roberts, C.J., dissenting).[13]

Here, to the extent Defendant is arguing that Plaintiffs lack Article III standing because the Recovery Agreement provides that Plaintiffs shall receive a contingent share of the proceeds,[14] the Court finds this argument foreclosed by *Sprint Communications*. As set forth above, the Supreme Court has expressly rejected the argument that an assignment agreement with a recovery-sharing

---

[13] In addition, Justice Roberts questioned the majority's finding that, by the 19th century, most jurisdictions favored the assignment of claims for collection. In so doing, Justice Roberts specifically noted that several states, including Ohio, have historically refused to recognize such assignments. *Id.* at 309 (citing *Brown v. Ginn*, 64 N.E. 123 (Ohio 1902)).

[14] The May 2017 Recovery Agreement provides that SummaCare will receive a 50% share of the "net proceeds," with MSP Recovery retaining the rest. The Agreement provides the following example of "net proceeds": "[1] MSP Recovery recovers $12,000 and incurs $500 in costs; [2] Net Proceeds are $11,500; [3] [SummaCare receives 50% of $11,500 – [i.e.,] $5,750' [and] [4] MSP Recovery receives 50% of $11,500 = $5,750." (Doc. No. 1-5 at § 2.2)

provision defeats Article III standing. Federal courts that have considered the same standing argument raised by Defendant herein have found it to be foreclosed by *Sprint Communications, supra*. *See, e.g., MSPA Claims 1, LLC v. Allstate Ins. Co*., 2019 WL 4305519 at * 3 (N.D. Ill. Sept. 11, 2019) ("Allstate contends that what Plaintiff characterizes as assignments are in fact contingency fee agreements, which would defeat Plaintiff's standing. But the Supreme Court has expressly rejected the argument that an assignee has no standing simply because the assignment agreement contains a recovery-sharing provision.") (citing *Sprint Communications, supra*); *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch*., 2018 WL 5086623 at *12 (C.D. Cal. Aug. 13, 2018) (same).

In its Reply Brief, Defendant asserts that *Sprint Communications* "is not the cure-all that Plaintiff portends."[15] (Doc. No. 21 at p. 3.) Defendant then raises the doctrines of champerty and maintenance, explaining that "Ohio law defines champerty and maintenance when a 'nonparty undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues.'" (*Id*. at p. 4) (citing *Rancman v. Interim Settlement Funding Corp*., 789 N.E.2d 217 (Ohio 2003)). Defendant asserts that, under the doctrine of champerty, an agreement to assign a right to future litigation proceeds is void. (*Id*.) Defendant maintains that "[t]hat prohibited speculation is precisely what the Recovery Agreement does, giving MSP Recovery, LLC (or a further assignee) half of all future net proceeds from litigating vaguely defined claims assigned in the future." (*Id*.)

---

[15] Although not entirely clear, Defendant appears to argue that *Sprint Communications* does not apply because the Supreme Court in that case considered the question of Article III standing, rather than the validity of the assignment itself under state law. The Court agrees that the Supreme Court's ruling in *Sprint Communications* was based on Article III and therefore is not binding with respect to the threshold issue of whether the assignment is valid under state law.

As an initial matter, the Court questions whether Defendant sufficiently raised the issue of champerty in its Motion to Dismiss. Neither the words champerty or maintenance appear in the Motion, nor do any citations to Ohio law that directly discuss or apply those doctrines. While Defendant does cite to several Ohio cases in its Motion that could be considered related to the concept of champerty (i.e., *Ishler, supra* and *Bellaire, supra*),[16] the Court has serious doubts as to whether Defendant's perfunctory citation to those cases and single sentence regarding contingency fee agreements is sufficient to put Plaintiffs on notice that Defendant is seeking dismissal of this action on the basis of champerty.

Defendant first directly raises the issue of champerty in its Reply Brief. It is well established, however, that courts will not normally consider issues raised for the first time in Reply Briefs, as it deprives the non-movant of a full and fair opportunity to respond. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir.2008) (explaining that "reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration") (emphasis in original) (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)); *Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 436 F.3d 662, 676 (6th Cir. 2006) (stating that "[i]t is impermissible to mention an issue for the first time

---

[16] In *Ishler,* appellant Ishler brought an action, as assignee, seeking the recovery from appellee of monies claimed due as rent to the assignor. *Ishler*, 1975 WL 182504 at * 1. The appellate court found that the assignment of the account to Ishler was "for the obvious purpose of collection of the account," and concluded that "the fact that the proceeds of the collection of the account will go to the assignor, less one-third fee for appellant's services, attests to the conclusion that appellant was not the real party in interest below." *Id.* at *2. Similarly, in *Bellaire*, DuBois Service Station assigned an account to Bellaire Credit Control for collection. The appellate court determined there was insufficient evidence in the record to determine whether Bellaire was the real party in interest under Ohio Civ. R. 17(A), but "agreed . . with defendants' citations of authorities relative to an assignee for the purpose of filing suit only, or for the purpose of collection only, cannot be a real party in interest." *Id.* at * 3. Although neither *Ishler* and *Bellaire* directly discuss the doctrines of champerty or maintenance, they each cite to *Brown v. Ginn*, 64 N.E. 123 (Ohio 1902), in which the Ohio Supreme Court found that a contract assigning accounts to an attorney for collection on a contingent fee basis was champertous and invalid.

in a reply brief because the [opponent] then has no opportunity to respond") (quoting *Knighten v. Commissioner*, 702 F.2d 59, 60 n. 1 (5th Cir. 1983)).

However, even assuming *arguendo* that Defendant's Motion could be construed as sufficiently raising the issue of champerty, the Court would find that dismissal on that basis is not appropriate at this stage of the proceedings. The Ohio Supreme Court explained the doctrines of champerty and maintenance, as follows:

> {¶ 10} "Maintenance" is assistance to a litigant in pursuing or defending a lawsuit provided by someone who does not have a bona fide interest in the case. "Champerty" is a form of maintenance in which a nonparty undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues. 14 Ohio Jurisprudence 3d (1995), Champerty and Maintenance, Section 1. "The doctrines of champerty and maintenance were developed at common law to prevent officious intermeddlers from stirring up strife and contention by vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of the law." 14 Corpus Juris Secundum (1991), Champerty and Maintenance, Section 3. *See, also, Bluebird Partners, L.P. v. First Fid. Bank, N.A.* (2000), 94 N.Y.2d 726, 709 N.Y.S.2d 865, 731 N.E.2d 581.

> {¶ 11} The ancient practices of champerty and maintenance have been vilified in Ohio since the early years of our statehood. *Key v. Vattier* (1823), 1 Ohio 132, 136, 1823 WL 8. We stated in *Key* that maintenance "is an offense against public justice, as it keeps alive strife and contention, and perverts the remedial process of the law into an engine of oppression." *Id*. at 143. We have held the assignment of rights to a lawsuit to be void as champerty. *Brown v. Ginn* (1902), 66 Ohio St. 316, 64 N.E. 123, paragraph two of the syllabus. We have also said "that the law of Ohio will tolerate no lien in or out of the [legal] profession, as a general rule, which will prevent litigants from compromising, or settling their controversies, or which, in its tendencies, encourages, promotes, or extends litigation." *Davy v. Fid. & Cas. Ins. Co*. (1908), 78 Ohio St. 256, 268–269, 85 N.E. 504.

> {¶ 12} In recent years, champerty and maintenance have lain dormant in Ohio courts. Historically, champertors and maintainors were attorneys, and these practices by attorneys have been regulated by DR 5–103 of the Code of Professional Responsibility. *See, e.g., Disciplinary Counsel v. Williams* (1990), 51 Ohio St.3d 36, 553 N.E.2d 1082. Nonetheless, the codification of these doctrines for attorney discipline did not remove them from the common law. "[T]he doctrines of champerty and maintenance appear in numerous Ohio cases as contract defenses * * *." *Tosi v.*

*Jones* (1996), 115 Ohio App.3d 396, 400, 685 N.E.2d 580, appeal dismissed upon the application of appellant in (1997), 78 Ohio St.3d 1430, 676 N.E.2d 535.

*Rancman v. Interim Settlement Fund Corp.*, 789 N.E.2d 217, 219-220 (Ohio 2003). *See also Hiles v. NovaStar Mortg., Inc.*, 2012 WL 4813775 at * 4 (S.D. Oct. 10, 2012).

Here, Defendant does not discuss the elements of champerty and/or maintenance in its Reply Brief or attempt to apply either of these doctrines to the facts of the instant case in any meaningful fashion. Rather, Defendant states only that the Recovery Agreement herein should be found void under the doctrine of champerty because it constitutes "prohibited speculation" in lawsuits.

The Court finds Defendant has failed to properly raise the doctrines of champerty and maintenance or otherwise demonstrate, at this stage of the proceedings, that the Recovery Agreement at issue is invalid on the basis of either of those doctrines. Defendant may, of course, revisit this issue at the summary judgment stage, if it so chooses.

### 2. Failure to allege that SummaCare made valid conditional payments sufficient to show that Defendant caused an injury

Defendant next argues that Plaintiffs lack standing because they have not shown an injury causally related to their claims.[17] (Doc. No. 12-1 at p. 9.) Citing 42 U.S.C. § 1395y(b)(2)(B)(i) and 42 C.F.R. § 422.108(b), Defendant asserts that a MAO may only make a conditional payment if a primary insurer improperly denies coverage or indicates that it will not pay. (*Id.* at p. 10.) Defendant argues that Plaintiffs' claim fails because there are no allegations of what efforts, if any, SummaCare made before paying for health care services to (1) identify payers that are primary to Medicare, (2)

---

[17] Again, Defendant does not clearly state whether it is raising a facial or factual challenge to jurisdiction with respect to this argument. Because Defendant repeatedly argues throughout its Motion and Reply Brief that the Court lacks jurisdiction because the Plaintiffs failed to plausibly allege certain facts, the Court treats Defendant's argument as raising a facial challenge to jurisdiction.

determine the amounts payable by those payers, and/or (3) coordinate benefits with primary payers. (*Id.* at p. 11.)  Instead, Defendant argues that "the Complaint alleges only that SummaCare 'paid for medical expenses' and [contains] no facts of how SummaCare first determined whether Grange as the primary payer would not pay."  (*Id*. at p. 12.)  In sum, Defendant argues that "Medicare statutes do not permit a MAO to violate the law by prematurely paying claims before presenting them to a primary insurer already identified in the CMS database, and then assign those claims for invalid payments to a bounty hunter to file an action for double damages." (*Id*. at p. 13.)

Plaintiffs argue that the plain language of the MSP Act does not impose the requirement that a MAO first identify and demand payment from a primary payer before making a conditional payment.  (Doc. No. 17 at p. 5.)  Rather, Plaintiffs assert that the MSP Act, federal regulations and numerous federal courts have made clear that a MAO's right to reimbursement is automatic regardless of whether or not the MAO first made a claim to the primary plan. (*Id*. at p. 6.)  Thus, Plaintiffs maintain that "the conditional nature of payment results from operation of law, and not from any action by the MAO to label the payment as 'conditional.'"  (*Id*. at p. 7.)

Pursuant to § 1395y(b)(2)(B)(i), "[t]he Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations)."  42 U.S.C. § 1395y(b)(2)(B)(i).  This Section further provides that "[a]ny such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection." [18]

---

[18]The term "conditional payment" is defined in 42 CFR § 411.21 as a "Medicare payment for services for which another payer is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that the other coverage existed."

In evaluating whether the assignor of a MAO has pled sufficient facts to establish standing under Article III, several courts have recently found that "as a general matter, . . . 'plaintiffs need only allege facts demonstrating that the MAOs 'incurred reimbursable costs and were not reimbursed.'" *See, e.g., MAO-MSO Recovery II, LLC v. Farmers Insurance Exchange*, 2018 WL 2106467 at * 8 (C.D. Cal. May 7, 2018) (quoting *MAO–MSO Recovery II, LLC v. Boehringer Ingelheim Pharm., Inc. ("Boehringer"),* 281 F.Supp.3d 1278, 1283 (S.D. Fla. 2017)). *See also MAO-MSO Recovery II, LLC v. Government Employees Ins. Co.*, 2018 WL 999920 at *6 (D. Md. Feb. 21, 2018). In so finding, these courts have expressly rejected the argument that plaintiffs must plead detailed facts showing that the MAO was entitled to reimbursement under the MSP. *See, e.g., Farmers Insurance Exch.,* 2018 WL 2106487 at * 7; *Boehringer*, 281 F.Supp.3d at 1282-1283.

Here, Plaintiffs allege that E.C., D.W., and M.K. (hereinafter "the enrollees") were each enrolled in Medicare Advantage plans that were issued and administered by MAO SummaCare. (Doc. No. 1 at ¶¶ 7, 19, 26.) Plaintiffs further allege that the enrollees (1) suffered injuries as a result of accidents caused by tortfeasors insured by Defendant Grange; and (2) received medical treatment and services for their accident-related injuries. (*Id*. at ¶¶ 8, 9, 20, 21, 27, 28.) Plaintiffs allege that the enrollee's medical providers billed SummaCare for payment of the accident-related medical expenses, which SummaCare subsequently paid. (*Id*. at ¶¶ 10, 22, 29.) Plaintiffs then allege that the enrollees made claims against Defendant's insureds, which Defendant subsequently settled. (*Id*. at ¶¶ 11, 23, 30.) Plaintiffs allege that, by entering into those settlement agreements in exchange for releases of all claims, Defendant "became a primary payer and subject to liability for" the enrollees' accident-related medical expenses. (*Id*. at ¶¶ 11, 23, 30.) Finally, Plaintiffs allege that, despite being

a primary payer, Defendant has refused to reimburse Plaintiffs for the enrollees' medical expenses. (*Id*. at ¶¶ 12, 23, 30.)

Based on the above, the Court finds that Plaintiffs have sufficiently plead an injury causally related to their MSPA claims; i.e., that SummaCare incurred costs covering its enrollees' medical expenses under circumstances in which Defendant was the primary payer and obligated to reimburse the MAOs but failed to do so. Defendant has not identified any persuasive authority[19] indicating that, in order to survive dismissal at the pleading stage, Plaintiffs must allege detailed facts that, prior to making conditional payments, SummaCare identified and coordinated benefits with primary payers. To the contrary, the majority of courts to consider this issue have rejected such strict pleading requirements.[20] *See, e.g., Farmers Insurance Exchange*, 2018 WL 2106487 at * 8; *Boehringer,* 281 F.Supp.3d at 1283; *Government Employees Ins. Co.*, 2018 WL 999920 at *6. The Court agrees with the reasoning of these decisions and finds Plaintiffs' allegations sufficient to withstand dismissal.

## C. Failure to State a Claim upon which Relief may be Granted

As noted *supra*, Defendant also seeks dismissal under Rule 12(b)(6). Specifically, Defendant argues the Complaint should be dismissed because (1) MAOs do not have a private right of action

---

[19] In support of its argument, Defendant cites an unreported Florida state case, *MSPA Claims I, LLC v. Security Nat. Ins. Co*., 2017 WL 1375163 at * 5 (Fla. Cir. Ct., 11th Jud. Distr. March 31, 2017), in which the court found that a MAO "is required 'to attempt to identify primary payers' and should not pay unless it also makes a determination that a primary plan cannot reasonably be expected to make payment promptly or is unaware of the existence of primary coverage." *Id.* at * 5. In that case, however, Plaintiffs asserted state law breach of contract claims and did not assert any federal claims, including any claims under the MSPA. Thus, the Florida court did not consider this issue in the context of pleading requirements relating to establishing Article III standing with respect to a claim under 42 U.S.C. § 1395y(b)(3)(A).

[20] *See also Collins v. Wellcare Healthcare Plans*, 73 F.Supp.3d 653, 669 (E.D. La. 2014) ("There is nothing in the statute to support Collins' interpretation that the Medicare organization must engage in a thorough investigation to unequivocally ascertain whether payment from another source can be expected."); *MSP Recovery Claims, Series LLC v. Progressive Corporation*, 2019 WL 5448356 (N.D. Ohio Sept. 17, 2019) (finding "no requirement that Medicare or an MAO[must] first present the claim to the primary plan" before making a conditional payment).

under the MSPA; (2) Plaintiffs' claims are barred by the MSPA's three-year presentment deadline and/or Plaintiffs and/or SummaCare failed to provide proper notice to Defendant of conditional payments; and (3) Plaintiffs fail to allege facts showing that Defendant had a responsibility to pay. (Doc. No. 12-1.)   The Court will address each of these arguments in turn.

### 1.    Private Right of Action

As noted above, the Complaint in this action sets forth one claim; i.e. a private cause of action under 42 U.S.C. § 1395y(b)(3)(A).  (Doc. No. 1 at ¶¶ 70-80.)  Defendant argues that this claim "fails as a matter of law because neither [Plaintiffs] nor SummaCare have a cause of action under the plain text of the MSPA."  (Doc. No. 12-1 at p. 13.)  Although acknowledging that the Third and Eleventh Circuits have held otherwise, Defendant maintains that "the Sixth Circuit has suggested in at least three different cases that MAOs do not have a cause of action under the MSPA's double-damages provision."  (*Id.*) (citing *Care Choices HMO v. Engstrom*, 330 F.3d 786 (6th Cir. 2003), *Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011), and *Mich. Spine & Brain Surgeons PLLC v. State Farm Mut. Auto Ins. Co.*, 758 F.3d 787 (6th Cir. 2014)).  Defendant further asserts that important policy reasons support treating MAOs differently from Medicare, arguing that "a private cause of action for MAOs does not benefit the federal government."  (*Id.* at p. 14.)  Finally, Defendant argues that § 1395y(b)(3)(A) contains no language that would apply to MAOs, while "Congress gave very specific and different secondary payer rights [to MAOs] that do not include a private right of action" in § 1395w-22(a)(4).  (*Id.* at p. 15.)  Defendant maintains that "[t]his Court should not override the same language in § 1395w-22(a)(4) to enable MAOs . . . to avail themselves of a private cause of action that Congress created before MAOs even existed."  (*Id.*)

Plaintiffs argue that "every court to have considered" the issue has recognized a private right of action for MAOs under § 1395y(b)(3)(A), including the Third and Eleventh Circuits and numerous district courts. (Doc. No. 17 at p. 9.) Plaintiffs maintain that these courts have correctly decided the issue, arguing that the plain text of § 1395y(b)(3)(A) sweeps broadly enough to include MAOs and that policy considerations overwhelmingly favor allowing MAOs a private right of action. (*Id.* at pp. 12-13.) Lastly, Plaintiffs argue that the Sixth Circuit cases relied upon by Defendant are not relevant because they do not address the specific question presented herein. (*Id.* at pp. 10-11.) Indeed, Plaintiffs maintain that, although not directly on point, the Sixth Circuit's decision in *Michigan Spine* is actually "completely consistent with Plaintiff's position." (*Id.*)

In Reply, Defendant argues that Plaintiffs fail to address the fact that, under the plain language of the statute, the scope of § 1395y(b)(3)(A) is limited by §§ 1395y(b)(1) and (2)(A). (Doc. No. 21 at p. 8.) Defendant maintains that neither paragraph (b)(1) or (2)(A) empower MAOs to sue. Specifically, Defendant asserts that paragraph (b)(1) applies to group health plans which are not at issue here. Further, according to Defendant, Paragraph (b)(2)(A) forbids the *Secretary* from making payments when an insurance policy has paid except that the *Secretary* can make conditional payments when payment from a primary plan is not available or reasonably expected. Defendant maintains that nothing in these provisions address MAOs and, instead, an MAO's right to recovery is described separately in 42 U.S.C. § 1395w-22(a)(4). (*Id.* at pp. 8-9.) In addition, Defendant strenuously maintains that both the Ninth Circuit's decision in *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146 (9th Cir. 2013) and the Sixth Circuit's decision in *Engstrom* support its position that 1395y(b)(3)(A) does not provide a private cause of action for MAOs. (*Id.* at pp. 9-12.)

A review of the cases cited by Defendant in its Motion reveals that the Sixth Circuit has not directly addressed the question of whether § 1395y(b)(3)(A) provides a private right of action for MAOs for double damages. Instead, the Sixth Circuit considered the separate question of whether the private cause of action provision of § 1395y(b)(3)(A) permits medical service providers to recover payment for medical services from a group health plan designated as a primary payer, when the group health plan denied payment on behalf of an enrollee because the enrollee was eligible for Medicare. In *Bio–Med. Applications of Tenn., Inc. v. Cent. States Health and Welfare Fund*, 656 F.3d 277, 294 (6th Cir.2011), the court found that it did. In so holding, the court interpreted the phrase "in accordance with paragraphs (1) and (2)(A)" contained in § 1395y(b)(3)(A) to mean that a plaintiff seeking to recover against a group health plan must show that the group health plan violated the provisions of both § 1395y(b)(1) and § 1395y(b)(2)(A). *Id.* at 285 ("But the private cause of action uses the conjunctive: it requires that the primary plan fail to make payment 'in accordance with paragraphs (1) and (2)(A).'") (quoting 42 U.S.C. § 1395y(b)(3)(A))).

The Sixth Circuit later found § 1395y(b)(3)(A) to be ambiguous with respect to the statutory obligations of primary payers that are not group health plans. *Michigan Spine & Brain Surgeons*, 758 F.3d at 792. As the court in *Michigan Spine* explained:

> On the one hand, paragraph (1), "Requirements of group health plans," notes that group health plans may not take Medicare eligibility into account, and subparagraph (2)(A) indicates that only primary plans that are group health plans need abide by the group health plan requirements in paragraph (1). On the other hand, subparagraph (3)(A), the private cause of action, seems to require that all primary plans-group and non-group health plans alike-abide by the group health plan requirements listed in paragraph (1).

*Id.* Therefore, the court deferred to the interpretation of the statute contained in regulations promulgated by CMS. *Id.* at 792–93 (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467

U.S. 837, 842–45 (1985)).  In doing so, the court concluded that a plaintiff seeking to recover against

a primary payer that is not a group health plan need only show that the primary payer failed to comply

with its obligation to pay under § 1395y(b)(2)(A).  *Id*.  Thus, the court held that a medical service

provider had a federal right of action to recover payment for services rendered to a person covered

by an automobile insurance policy, when the automobile insurance policy made the insurance

company a primary payer under § 1395y(b)(2)(A).  *Id*.

      While the Sixth Circuit has considered this aspect of the MSP Act in some detail, it has not

considered the question presented by this case: whether § 1395y(b)(3)(A) gives an MAO (rather than

a medical service provider) a right of action to recover from a primary payer when the MAO has

made medical payments that should have been made by the primary payer.  The Third and Eleventh

Circuits, however, have considered this precise issue and found that it does.  In *In re Avandia*, the

Third Circuit exhaustively reviewed the relevant statutory text and framework, as well as legislative

history, to find that § 1395y(b)(3)(A) unambiguously creates a private right of action for a MAO.  *In*

*re Avandia*, 685 F.3d at 357-366.  Specifically, the court explained that §1395y(b)(3)(A) "is broad

and unambiguous, placing no limitations upon which private (i.e., non-governmental) actors can

bring suit for double damages when a primary plan fails to appropriately reimburse any secondary

payer."  *Id.* at 359.  Notably, in reaching this conclusion, the court rejected the very argument raised

by Defendant Grange herein, that the scope of § 1395y(b)(3)(A) is limited by its reference to

paragraphs (b)(1) and (2)(A):

> The MSP private cause of action provision allows for damages where the primary plan
> has failed to pay "in accordance with paragraphs (1) and (2)(A)."  *Id*.  Paragraph
> (2)(A), in turn, consistently refers to payments "under this subchapter." [footnote
> omitted] § 1395y(b)(2)(A). * * *

. . . Humana argues that because "subchapter" refers to the Medicare Act as a whole, and not in particular to Parts A or B under which the government provides benefits directly to enrollees, payments made by private providers under Parts C or D are also covered. Humana supports this assertion by highlighting other places in the Medicare Act where Congress intentionally limited the applicability of a provision to payments made under particular Parts of the Medicare Act. (Appellants' Br. 23.) These provisions refer specifically to "payment made under part A or part B of this subchapter," § 1395y(a), or payment made "under Part B of this subchapter," § 1395y(c). *See also* § 1395y(f) (requiring Secretary to establish guidelines as to whether payment may be made for certain expenses "under part A or part B of this subchapter").

**This language makes clear that "subchapter" refers to the Medicare Act as a whole. Since the MSP Act and its private cause of action provision do not attach any narrowing language to "payments made under this subchapter," that phrase applies to payments made under Part C as well as those made under Parts A and B. Accordingly, that language cannot be read to exclude MAOs from the ambit of the private cause of action provision.**

*Id*. at 359-360 (emphasis added).

The court went on to find that, even if the statute were deemed ambiguous on this point, "deference to CMS regulations would require us to find that MAOs have the same right to recover as the Medicare Trust Fund does." *Id*. at 357. The court noted that CMS regulations expressly provide that an "MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108. The court found that "[t]he plain language of this regulation suggests that the Medicare Act treats MAOs the same way it treats the Medicare Trust Fund for purposes of recovery from any primary payer." *Id.* at 366. In this circumstance, the court concluded, "we are bound to defer to the duly-promulgated regulation of CMS." *Id.*

The Eleventh Circuit reached the same conclusion several years later in *Humana Medical Plan, Inc. v. Western Heritage Insurance Co*., 832 F.3d 1229 (11th Cir. 2016). In finding that §1395y(b)(3)(A) provides a private right of action for MAOs, the court rejected the defendant's

argument (also raised by Defendant Grange herein) that MAOs are restricted to the right-to-charge provision § 1395w-22(a)(4), rather than the private right of action provided in § 1395y(b)(3)(A):

> Western suggests that the MSP does not govern MAOs at all and that the MAO right-to-charge provision [i.e., § 1395w-22(a)(4)] instead governs when and whether an MAO is a secondary payer. According to Western, because an MAO derives secondary payer status from [§ 1395w-22(a)(4)] rather than the MSP, an MAO may not sue under the MSP private cause of action.
>
> We reject Western's reading as contrary to the plain language of the pertinent provisions. First, paragraph (2)(A) unambiguously refers to all Medicare payments, which include both traditional Medicare and Medicare Advantage plans. *See In re Avandia*, 685 F.3d at 360; 42 U.S.C. § 1395y(b)(2)(A) (regulating "[p]ayment under this subchapter"). Second, [§ 1395w-22(a)(4)] parenthetically refers to circumstances under which MAO payments are "made secondary pursuant to section 1395y(b)(2)." 42 U.S.C. § 1395w-22(a)(4) (emphasis added). A plain reading of paragraph (2)(A) and [§ 1395w-22(a)(4)] therefore reveals that MAO payments are made secondary to primary payments pursuant to the MSP, not [§ 1395w-22(a)(4)]. This alone suggests that the MSP does not limit the cause of action in paragraph (3)(A) to cases in which traditional Medicare is the secondary payer.

*Id.* at 1237. The court also rejected the defendant's argument (again, also raised by Defendant Grange herein) that § 1395y(b)(3)(A) is limited to situations where the secondary payer is the Secretary, rather than the MAO:

> The fact that paragraph (2)(B), the sole exception to paragraph (2)(A), refers to the Secretary does not alter our analysis. *See id*. § 1395y(b)(2)(B) (authorizing the Secretary to make conditional payment when a primary plan "has not made or cannot reasonably be expected to make [prompt] payment"). Even if paragraph (2)(B) does not apply to MAOs, [fn omitted] neither paragraph (2)(A) nor paragraph (3)(A) contain the limiting language found in paragraph (2)(B). Paragraph (2)(A) establishes secondary payer status for all Medicare and defines "primary plan" with reference to pre-existing obligations. Thus, a primary plan that fails to make primary payment has failed to do so "in accordance with paragraphs (1) and (2)(A)," regardless of whether the secondary payer is the Secretary or a MAO. *Id*. § 1395y(b)(3)(A).

*Id*. at 1237-1238. Thus, the court found that there was "no basis to exclude MAOs from a broadly worded provision that enables a plaintiff to vindicate harm caused by a primary plan's failure to meet its MSP primary payment or reimbursement obligations." *Id*. at 1238. Therefore, it concluded "a

MAO may avail itself of the MSP private cause of action when a primary plan fails to make primary payment or to reimburse the MAO's secondary payment." *Id.*

As Plaintiffs correctly note, numerous district courts (including several within the Sixth Circuit) have agreed with the reasoning set forth in *In re Avandia* and *Western Heritage* to find that §13957(b)(3)(A) provides a private right of action for MAOs. *See, e.g., MSP Recovery Claims, Series LLC v. Progressive Corporation*, 2019 WL 5448356 (N.D. Ohio Sept. 17, 2019); *Humana Inc. v. Medtronic Sofamor Danek USA, Inc.*, 133 F.Supp.3d 1068, 1078 (W.D. Tenn. 2015); *Cariten Health Plan, Inc. v. Mid-Century Ins. Co.*, 2015 WL 5449221 (E.D. Tenn. Sept. 1, 2015); *Humana Insurance Co. v. Paris Blank LLP*, 187 F.Supp.3d 676 (E.D. Va. 2016); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F.Supp.3d 653 (E.D. La. 2014).

For the following reasons, and after careful review of the authority cited by both parties, the Court finds that Plaintiffs may pursue a private right of action against Defendant herein under §1395y(b)(3)(A). The Sixth Circuit's decisions in *Bio-Medical* and *Michigan Spine* are not directly on point because the Sixth Circuit did not consider, in either of those cases, whether a private cause of action may be maintained by an MAO under § 1395y(b)(3)(A). However, the Sixth Circuit did read § 1395y(b)(3)(A) broadly in *Michigan Spine* to provide such a right to health care providers as against non-group health plans. Moreover, the Court notes that, in so doing, the Sixth Circuit cited approvingly to *In re Avandia. See Michigan Spine,* 758 F.3d at 793. As discussed at length above, in *In re Avandia*, the Third Circuit explicitly recognized a private right of action for MAOs under §1395y(b)(3)(A), rejecting many of the same arguments raised by Defendant herein.

The Court finds the reasoning in *In re Avandia* (and *Western Heritage,* which reached the same conclusion) to be persuasive. The Court agrees with those courts that the language of

§1395y(b)(3)(A) is broadly worded and does not include any language limiting the types of private parties that can bring suit for double damages when a primary payer fails to appropriately reimburse a secondary payer. As the *In re Avandia* court noted, at the time the MSP Act was passed in 1980, "Congress was certainly aware that private health plans might be interested private parties when it drafted the [private] cause of action, and it did not exclude them from that provision's ambit." *In re Avandia*, 685 F.3d at 367. Defendant has not offered any compelling reason for reading such a limitation into the statute.[21]

The Court also rejects Defendant's argument that allowing MAOs a private right of action under § 1395y(b)(3)(A) provides no benefit to the government. As the Third Circuit noted in *In re Avandia*, "[i]f an MA plan provides CMS with a bid to cover Medicare-eligible individuals for an amount less than the benchmark calculated by CMS, it must use seventy-five percent of that savings to provide additional benefits to its enrollees." *In re Avandia*, 685 F.3d at 365 (citing 42 U.S.C. §§ 1395w–24(b)(1)(C)(i), (b)(3)(C), and (b)(4)(C)). "The remaining twenty-five percent of the savings is retained by the Medicare Trust Fund." *Id.* Therefore, "when MAOs spend less on providing

---

[21] In particular, the Court rejects Defendant's argument that the phrase "in accordance with paragraphs (1) and (2)(A)" limits application of §1395y(b)(3)(A) only to where payments are made by the Secretary. As set forth *supra*, Subparagraph (2)(A) provides that Medicare may not pay when a primary plan is expected to pay, "except as provided in subparagraph [2](B)," which in turn provides that when the primary plan "has not or cannot reasonably be expected" to pay "promptly," "the Secretary" may make a conditional payment. *See* 42 U.S.C. §§ 1395y(b)(2)(A) and (B). As noted in both *In re Avandia* and *Western Heritage*, the secondary payer scheme established by § 1395y(b)(2)(A) applies to "[p]ayment under this subchapter." 42 U.S.C. § 1395y(b)(2)(A). Courts have found that the term "subchapter" in this instance refers to the entire Medicare Statute, including Part C governing MAOs. *In re Avandia*, 658 F.3d at 360. *See also Western Heritage*, 832 F.3d at 1237 ("[P]aragraph (2)(A) unambiguously refers to all Medicare payments, which includes both traditional Medicare and Medicare Advantage Plans."); *Cariten Health Plan*, 2015 WL 5449221 at * 7. Further, the MAO provision set forth in § 1395w-22(a)(4) refers to circumstances under which MAO payments are "made secondary pursuant to section 1395y(b)(2)." 42 U.S.C. § 1395w-22(a)(4). As the court explained in *Western Heritage, supra*, "[a] plain reading of paragraph (2)(A) and [§ 1395w-22(a)(4)], therefore reveals that MAO payments are made secondary to primary payments pursuant to the MSP, not [§ 1395w-22(a)(4)]. This alone suggests that the MSP does not limit the cause of action in paragraph (3)(A) to cases in which traditional Medicare is the secondary payer." *Western Heritage*, 832 F.3d at 1237. *See also Cariten,* 2015 WL 5449221 at * 7.

coverage for their enrollees, as they will if they recover efficiently from primary payers, the Medicare Trust Fund does achieve cost savings." *Id.* Additionally, "when, by recovering from primary payers, MAOs save money, that savings results in additional benefits to enrollees not covered by traditional Medicare." *Id.* Thus, "ensuring that MAOs can recover from primary payers efficiently with a private cause of action for double damages does indeed advance the goals of the MA program." *Id.*

Furthermore, the Court finds Defendant's reliance on *Engstrom, supra* to be misplaced. In *Engstrom*, the Sixth Circuit considered the argument of Care Choices, a Medicare-substitute HMO, that § 1395mm(e)(4) provided an implied federal private right of action that allowed it to recover the cost of an insured's medical expenses, where the participant had collected damages from the tortfeasor who had injured her. *Care Choices HMO v. Engstrom*, 330 F.3d 786 (6th Cir. 2003). The court declined to find an implied private right of action under § 1395mm(e)(4). In so doing, it compared the language of the MSP Act private cause of action provision with § 1395mm(e)(4), noting that §1395y(b) uses mandatory language to create a federal right of action whereas § 1395mm(e)(4) does not. *Id.* at 790. The Sixth Circuit did not consider, however, whether Care Choices could have brought suit under § 1395y(b)(3)(A). Indeed, the court noted that "the express remedy provided to Medicare was created in a different statutory provision, in a different bill, passed by a different Congress." *Id.* Thus, the Court finds the Sixth Circuit's decision in that case did not address the issue presented herein and is not directly applicable.[22]

---

[22] The Ninth Circuit's decision in *Parra, supra*, is distinguishable for the same reason. In *Parra*, the Ninth Circuit concluded that § 1395ww-22(a)(4) does not create an implied federal right of action. *Parra*, 715 F.3d at 1153. Rather, that statute "simply describes when MAO coverage is secondary to other insurance, and permits (but does not require) a MAO to include in its plan provisions allowing recovery against a primary plan." *Id.* Here, Plaintiffs do not argue that they have a private right of action (implied or otherwise) under § 1395ww-22(a)(4), instead pleading their sole claim under §1395y(b)(3)(A). Accordingly, *Parra* does not address, and is not relevant to, the issue presented herein.

Finally, the Court finds that, even if the language of § 1395y(b)(3)(A) is ambiguous with respect to the specific issue presented herein, *Chevron* deference would lead to the conclusion that MAOs possess a private right of action under that statute. *See Michigan Spine & Brain Surgeons,* 758 F.3d at 792 ("When statutory text is unclear, courts afford deference to and seek guidance from agency regulations.") In *Chevron*, the Supreme Court established a two-part test for determining when a federal court ought to defer to the interpretation of a statute embodied in a regulation formally enacted by the federal agency charged with implementing that statute. *Chevron*, 467 U.S. at 842–844. First, the court must determine whether Congress's intent on the issue is clear—if so, it must abide by that intention, regardless of any regulations. If the statute is unclear, that is, "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843. Courts defer to the agency's regulations "unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id*. at 844.

Here, it is undisputed that CMS has the congressional authority to promulgate regulations interpreting and implementing Medicare-related statutes. *See also* 42 U.S.C. § 1395hh(a)(1) ("The Secretary shall prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter."); 42 U.S.C. § 1395w–26(b)(1) ("The Secretary shall establish by regulation [ ] standards ... for [MA] organizations and plans consistent with, and to carry out, this part."). CMS regulations state that an "MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108(f). As the Third Circuit noted in *In re Avandia*, "[t]he plain language of this regulation suggests that the Medicare Act treats MAOs the same way it treats the Medicare Trust Fund for purposes of recovery from any

42

primary payer." *In re Avandia*, 685 F.3d at 366. Thus, even if the Court were to find §1395y(b)(3)(A) to be ambiguous, the application of *Chevron* deference to this regulation results in the conclusion that MAOs are able to exercise the same secondary payment recovery rights against primary plans as Medicare.

Accordingly, and for all the reasons set forth above, the Court finds that MAOs have a private right of action against primary plans under § 1395y(b)(3)(A). Defendant's argument to the contrary is without merit and rejected.

## 2. Three-year Presentment

Defendant next argues that Plaintiffs' claim fails because the Complaint fails to allege that Plaintiffs and/or SummaCare presented their claims for payment to Defendant within the three-year presentment period set forth in 42 U.S.C. § 1395y(b)(2)(B)(vi). (Doc. No. 12-1 at pp. 15-17.) Defendant asserts that this statute "reflects Congressional intent that Medicare must take the common sense first step of timely requesting payment from a primary insurer." (*Id*.) Defendant maintains that the Complaint does not allege that any of the three representative claims were properly "submitted to the entity required or responsible," as required by the MSPA. (*Id.*) Moreover, Defendant claims that the "statutory deadline for doing so – three years from [the date of] service—has expired for those three claims." (*Id*.) Defendant argues dismissal is warranted because "the jurisdictional prerequisite of submitting a request for payment to Grange has not yet been satisfied and could not be done timely in the future." (*Id*. at p. 17.)

In response, Plaintiffs argue that the claims-filing provision set forth in § 1395y(b)(2)(B)(vi) "has no relationship to Medicare's effort to recover through litigation and is completely irrelevant to a private party's distinct right to recovery under § 1395y(b)(3)(A)." (Doc. No. 17 at p. 13.) Plaintiffs

first assert that § 1395y(b)(2)(B)(vi) applies only to the filing of a request for payment by the United States pursuant to its subrogation rights, not to the United States' direct right of recovery under § 1395y(b)(2)(B)(iii). (*Id*. at p. 14.) Plaintiffs claim that this is the only interpretation that gives proper effect to the limitations period set forth in (B)(iii), which provides that "an action by the United States may not be brought the United States under this clause . . . unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award or other payment." (*Id*.) Plaintiffs further assert that, to the extent the three-year statute of limitations period set forth in § 1395y(b)(2)(B)(iii) applies, they are entitled to discovery on the issue of notice. (*Id*. at p. 18.)

In its Reply Brief, Defendant disputes Plaintiffs' argument that § 1395y(b)(2)(B)(vi) applies only to the United States' subrogation rights, noting that the opening clause of that statute "does not limit what follows to just employer group health plans but only serves to override claim filing time limits under an employer group health plan." (Doc. No. 21 at p. 14.) Defendant then argues that the three-year statute of limitations set forth in § 1395y(b)(2)(B)(iii) is separate and distinct from the three year presentment requirement in § 1395y(b)(2)(B)(vi), and asserts that "the two statutes must be read in harmony and both apply to Plaintiffs' claims against Grange." (*Id.* at p. 14-15.)

A review of the relevant statutory framework is necessary to understand the parties' arguments. As has been set forth *supra,* § 1395y(b)(2)(B)(i)(entitled "Authority to make conditional payment") authorizes conditional payments when a primary plan "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." 42 U.S.C. § 1395y(b)(2)(B)(i). Section 1395y(b)(2)(B)(iii) (entitled "Action by United States") then provides as follows:

> In order to recover payment made under this subchapter for an item or service, the
> United States may bring an action against any or all entities that are or were required

or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan. The United States may, in accordance with paragraph (3)(A) collect double damages against any such entity. In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity. The United States may not recover from a third-party administrator under this clause in cases where the third-party administrator would not be able to recover the amount at issue from the employer or group health plan and is not employed by or under contract with the employer or group health plan at the time the action for recovery is initiated by the United States or for whom it provides administrative services due to the insolvency or bankruptcy of the employer or plan. **An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed.**

42 U.S.C. § 1395y(b)(2)(B)(iii) (emphasis added).  The following section, § 1395y(b)(2)(B)(iv) (entitled "Subrogation rights") explains that "[t]he United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iv).

Defendants' argument is based on the next provision, § 1395y(b)(2)(B)(vi). This statute, which is entitled "Claims-filing period," provides as follows:

Notwithstanding any other time limits that may exist for filing a claim under an employer group health plan, the United States may seek to recover conditional payments in accordance with this subparagraph where the request for payment is submitted to the entity required or responsible under this subsection to pay with respect to the item or service (or any portion thereof) under a primary plan within the 3-year period beginning on the date on which the item or service was furnished.

42 U.S.C. § 1395y(b)(2)(B)(vi).

In reviewing questions of statutory interpretation, the Sixth Circuit employs a three-step framework:

[F]irst, a natural reading of the full text; second, the common-law meaning of the statutory terms; and finally, consideration of the statutory and legislative history for guidance. The natural reading of the full text requires that we examine the statute for its plain meaning, including the language and design of the statute as a whole. If the statutory language is not clear, we may examine the relevant legislative history.

*Elgharib v. Napolitano*, 600 F.3d 597, 601 (6th Cir. 2010) (citations and internal quotation marks omitted). *See also Hughes v. McCarthy*, 734 F.3d 473, 478 (6th Cir. 2013).

Based on a natural reading of the full text, the Court finds that § 1395y(b)(2)(B)(vi) does not create a statutory presentment requirement as a pre-condition to filing suit pursuant to §1395y(b)(3)(A). The plain language of the opening clause of § 1395y(b)(2)(B)(vi) ("[n]otwithstanding any other time limits that may exist for filing a claim under an employer group health plan") limits the application of that provision to claims against employer group health plans. *See Progressive*, 2019 WL 5448356 at * 9. This reading of the statute is consistent with its legislative history, which explains that § 1395y(b)(2)(B)(vi) was intended to address time constraints associated with the submission of claims in the context of employer group health plans:

Section 4702. Clarification of time and filing limitations

Current Law. In many cases where MSP recoveries are sought, claims have never been filed with the primary payer. **Identification of potential recoveries under the data match process typically takes several years–considerably in excess of the period many health plans allow for claims filing**. A 1994 appeals court decision held that HCFA could not recover overpayments without regard to an insurance plan's filing requirements.

Explanation of Provision. The provision would specify that the U.S. could seek to recover payments if the request for payments was submitted to the entity required or responsible to pay within 3 years from the date the item or service was furnished. **This provision would apply notwithstanding any other claims filing time limits that may apply under an employer group health plan**. The provision would apply to items and services furnished after 1990. The provision should not be construed as permitting any waiver of the 3-year requirement in the case of items and services furnished more than 3 years before enactment.

H.R. REP. 105-149, 739 (emphasis added). Notwithstanding Defendant's argument to the contrary, the Court finds that the above language confirms that the purpose of § 1395y(b)(2)(B)(vi) is, in fact, to expand the government's timeframe to pursue claims where the primary payer is a group health plan with more restrictive claims filing requirements. There is no indication, in either the statutory language itself or in the relevant legislative history, that the intent was to restrict the government's ability to pursue claims by imposing a mandatory presentment requirement.

In addition, the Court finds it significant that §1395y(b)(2)(B)(vi) does not contain mandatory language but, rather, that section is written permissively to allow the United States to recover conditional payments within a three-year period, regardless of whether an employer group health plan sets forth a shorter period for asserting a claim. *See, e.g., Progressive*, 2019 WL 5448356 at * 9. On its face, § 1395y(b)(2)(B)(vi) does not expressly require the United States to submit a request for payment prior to filing suit pursuant to the direct right of recovery provision set forth in § 1395y(b)(2)(B)(iii). *See, e.g., Progressive*, 2019 WL 5448356 at * 9. Indeed, nothing in the plain language of § 1395y(b)(2)(B)(vi) addresses the circumstances under which either the United States or a private party may file suit to pursue a direct right of recovery of conditional payments. *See MSPA Claims 1, LLC v. Bayfront HMA Medical Center, LLC*, 2018 WL 1400465 at * 6 (S. D. Fla. March 20, 2018) (noting that § 1395y(b)(2)(B)(vi) "does not contemplate litigation."); *MSPA Recovery Claims, Series LLC v. AIX Specialty Ins. Co*., 2019 WL 2211092 at * 4 (M.D. Fla. May 22, 2019) (same). Rather, that issue is squarely addressed in § 1395y(b)(2)(B)(iii), which contains mandatory language providing that "[a]n action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, [or] award . . ." This limitation provision is

contained in the specific section of the statute relating to bringing suit to enforce obligations under the MSPA and provides a clear mandate regarding the time period for initiating litigation.

The majority of district courts to consider this issue have reached the conclusion that the specific limitation period set forth in § 1395y(b)(2)(B)(iii) pertaining to bringing suits to recover conditional payments governs over the claims-filing provision set forth in § 1395y(b)(2)(B)(vi).  *See Progressive*, 2019 WL 5448356 at * 9; *Bayfront HMA Medical Center, LLC*, 2018 WL 1400465 at * 6; *AIX Specialty Ins. Co*., 2019 WL 2211092 at * 4.[23]  For all of the reasons set forth above, this Court agrees and, thus, rejects Defendant's argument that the Complaint should be dismissed because Plaintiffs failed to allege that SummaCare or Plaintiffs sent conditional payment letters to Defendant within the three-year presentment period set forth in § 1395y(b)(2)(B)(vi).[24]

### 3.      Demonstrated Responsibility to Pay

Lastly, Defendant argues that "the MSPA only provides a right to recover from a primary insurer when a responsibility to pay has been established, which Plaintiffs fail to plausibly allege." (Doc. No. 12-1 at p. 18.)  Specifically, Defendant maintains dismissal is warranted because Plaintiffs fail to allege the identity of the insured who allegedly caused the enrollees' accidents; how and where the accidents occurred; how Grange's insured was at fault; how the claimant's injuries were caused by Grange's insureds; what the payments were for; what was supposedly covered and paid by Grange; or what coverage determinations were made by Grange, "among many other missing critical facts."

---

[23] The Court recognizes that at least one district court has reached a different conclusion.  *See MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co*., 361 F.Supp.3d 1270 (S.D. Fla. 2018).  This Court respectfully disagrees with *Kingsway*, particularly in light of the legislative history noted above, which was not discussed in that decision.

[24] The Court notes that Defendant has not moved for dismissal on the grounds that Plaintiffs' claims are barred by the three-year limitations period set forth in § 1395y(b)(2)(B)(iii).  Thus, the Court does not address that issue herein.

(*Id.* at pp. 18-19.)  Defendant asserts it is not enough for Plaintiffs to simply allege that it incurred medical expenses.  Rather, according to Defendant, Plaintiffs must allege sufficient facts that demonstrate that Grange's failure to pay "caused" SummaCare to have to step in and "foot the bill." (*Id*. at p. 18.)

Plaintiffs argue that their factual allegations regarding this issue are "unquestionably sufficient." (Doc. No. 17 at p. 19.)  Specifically, Plaintiffs assert that they have properly alleged that SummaCare's payments were reasonable and necessary, and have supported that allegation with "the actual codes for the injuries sustained and resulting treatments." (*Id.* at p. 20.)  Plaintiffs further assert that the settlements entered into by Defendant with the enrollees "establish the Defendant's responsibility to pay medical bills and 'satisfy the condition precedent to suit under the MSP Act.'" (*Id*.)

Courts have held that, to sufficiently plead a claim under § 1395y(b)(3)(A), an MSPA plaintiff must allege: (1) the defendant's status as a primary plan for a claim covered by Medicare, (2) the defendant's failure to make the primary payment or appropriate reimbursement to the Medicare benefit provider, and (3) damages. *See Allstate Ins. Co*., 2019 WL 4305519 at * 4; *MAO-MSO Recovery II, LLC v. State Farm Mutual Automobile Ins. Co*., 2018 WL 3420796 at * 7 (C.D. Ill. July 13, 2018).  *See also Humana*, 832 F.3d at 1239 (applying these elements in the summary judgment context).

The MSP Act uses the term "primary plan" to describe entities with a primary responsibility to pay.  That term covers more than just health insurance plans and is defined to also include "a group health plan or large group health plan, ... a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance...." 42 U.S.C. §

1395y(b)(2)(A). Of particular relevance here, the statute requires a primary plan to reimburse Medicare "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). The statute proceeds to explain how that responsibility may be demonstrated:

> responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

*Id*. "This is the demonstrated responsibility requirement; in other words, Medicare may obtain reimbursement from a primary plan if it demonstrates that the primary plan 'has or had a responsibility' to pay for the item or service." *MSP Recovery, LLC v. Allstate Ins. Co*., 835 F.3d 1351, 1355 (11th Cir. 2016).

Defendant argues that Plaintiffs have failed to plausibly allege a "demonstrated responsibility" to pay under § 1395y(b)(2)(B)(ii) because the Complaint fails to set forth specific factual allegations regarding either the liability of the tortfeasor that caused underlying accidents, Grange's coverage determinations, or "what was supposedly covered and paid by Grange." The Court rejects this argument. In order to survive dismissal under Rule 12(b)(6), Plaintiffs need only plead "enough facts to state a claim to relief that is plausible on its face." *Bassett*, 528 F.3d at 430 (6th Cir.2008). For the following reasons, the Court finds the Complaint sets forth sufficient factual allegations to state claims for relief under § 1395y(b)(3)(A).

First, Plaintiffs allege that E.C., D.W., and M.K. were injured in automobile accidents with tortfeasors insured by Defendant. For each enrollee, Plaintiffs specifically allege the particular injuries sustained, as well as the medical items and services that were provided. Plaintiffs even go so far as to attach documents to the Complaint that list the diagnosis codes, injuries, items and services

relating to each of the enrollees' accident-related injuries. Second, Plaintiffs allege that SummaCare paid for the enrollees' accident-related medical expenses and, therefore, incurred damages. Third, Plaintiffs allege that Defendant is a primary payer because, in exchange for releases, it entered into settlement agreements with the enrollees relating to their respective automobile accidents. Finally, Plaintiffs allege that Defendant has refused to reimburse SummaCare and/or Plaintiffs for these expenses.

The Court finds these allegations to be sufficient to withstand dismissal. The level of particularity demanded by Defendant is simply not required at the pleading stage, as many courts have found under similar circumstances. *See, e.g., MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, 2018 WL 2106467 at * 10 (C.D. Cal. May 7, 2018); *MSPA Claims 1, LLC v. Allstate Ins. Co.*, 2019 WL 4305519 at * 4-5 (N.D. Ill. Sept. 11, 2019). *See also MAO-MSO Recovery II, LLC v. Mercury General*, 2018 WL 3357493 at * 8 (C.D. Cal. May 23, 2018) ("Here, Plaintiffs have alleged that Defendant's no-fault insurance contracts render Defendant responsible for primary payment of the expenses Plaintiffs seek to recover. These allegations are sufficient to demonstrate responsibility at the pleading stage."). As another district court aptly explained when rejecting a similar argument:

> The level of factual particularity demanded by GEICO at the initial pleading stage of these suits is eye-popping. It all but insists that Plaintiffs actually *prove*, rather than simply *plead*, their claims. This far exceeds the language of Fed. R. Civ. P. 8, and even the more demanding . . . standards of *Iqbal* and *Twombly* do not require a plaintiff to plead all the evidentiary facts needed to support its claims. The amended complaints contain a level of specificity that is sufficient for the Court 'to draw the reasonable inference' that the MAOs made payments of medical supplies and services that GEICO, as the primary payer, was obligated to cover; that GEICO made payments on behalf of its insureds pursuant to settlement agreements; and that GEICO failed to pay or reimburse the MAOs, such that GEICO 'is liable for the misconduct alleged.' *Iqbal*, 556 U.S. at 678. * * * Plaintiffs have stated claims on all counts, and GEICO's motions to dismiss are denied.

*MAO-MSO Recovery II, LLC v. Government Employees Ins. Co*., 2018 WL 999920 at * 12 (D. Md. Feb. 21, 2018) (emphasis in original).

Accordingly, this argument in support of Defendant's Motion to Dismiss is without merit and denied.

**V.      Conclusion**

For all the reasons set forth above, Defendant's Motion to Dismiss (Doc. No. 12) is GRANTED IN PART and DENIED IN PART, as follows.  The Court grants Defendant's Motion to Dismiss to the extent Count I is based on claims that had not yet vested as of the effective date of the May 2017 Recovery Agreement.  In all other respects, Defendant's Motion is denied.

**IT IS SO ORDERED.**

  *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  December 12, 2019                    U. S. DISTRICT JUDGE